﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/19 Archive Date: 12/30/19

DOCKET NO. 190528-6990
DATE: December 31, 2019

ORDER

Entitlement to service connection for a left knee disability is granted.

Entitlement to service connection for a left shoulder disability is granted.

REMANDED

Entitlement to service connection for nocturia is remanded.

Entitlement to service connection a right eyebrow laceration is remanded.

Entitlement to service connection balanitis is remanded.

Entitlement to service connection for an acquired psychiatric disorder (claimed as anxiety and depression) is remanded.

INTRODUCTION

The Veteran had active service from July 1980 to July 1983.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. 

The Veteran elected to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The rating decision initially on appeal was issued in March 2016. In April 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (codified at 38 C.F.R. § 19.2 (d)). The Veteran selected the Higher Level Review lane when he submitted the RAMP election form. In July 2018, the Agency of Original Jurisdiction (AOJ) issued a RAMP rating decision. The Veteran timely appealed the April 2019 RAMP rating decision to the Board and requested direct review of the evidence considered by the AOJ.

FINDING OF FACT

The Veteran’s left knee and left shoulder disabilities are etiologically related to his active service.

CONCLUSIONS OF LAW

1. The criteria for service connection for a left knee disability have been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2018).

2. The criteria for service connection for a left shoulder disability have been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSIONS

Legal Criteria

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110 ; 38 C.F.R. § 3.303.

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303 (d).

Factual Background and Analysis

The Veteran seeks service connection for left knee and left shoulder disabilities, which he contends originated in service.

The medical evidence confirms the Veteran currently has left knee and left shoulder strains. The central issue that must be resolved at this time is whether the Veteran’s current disabilities originated during service or are otherwise related to service.

Initially, the Board notes the Veteran’s service treatment records show that in September 1980 he reported experiencing left knee pain. He was noted to have possible chondromalacia or a strain at that time. In September 1982 the Veteran was evaluated for left shoulder pain, and was again diagnosed with a strain, with possible pinched nerve. By way of a February 2016 VA examination the Veteran was again diagnosed with left knee and shoulder strains. However, the examiner determined the Veteran’s left knee and shoulder disabilities were less likely than not incurred in or caused by service, because strains are common injuries that generally heal without ongoing residuals. However, these findings are both unsupported by the record and have been expressly called into question. Further, the examiner wholly failed to acknowledge or discuss the Veteran’s lay reports in his medical opinions. Examiners simply are not free to ignore a veteran’s statements related to lay observable symptoms. See Dalton v. Nicholson, 21 Vet. App. 23 (2007). Notwithstanding the medical opinions provided by the February 2016 VA examiner, the Veteran has reported he has experienced ongoing left knee and left shoulder pain since his injuries in service, which has gradually worsened over time. 

In this case, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The evaluation of evidence generally involves a 3-step inquiry. First, the Board must determine whether the evidence comes from a “competent” source. The Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303 (2007) (Observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). The third step of this inquiry requires the Board to weigh the probative value of the proffered evidence in light of the entirety of the record. The Board also notes that under certain circumstances, lay evidence may be sufficient to establish a nexus. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); see also Layno v. Brown, 6 Vet. App. 465, 469 (1994). Lay evidence has been found to be competent with regard to a disease that has “unique and readily identifiable features” that are “capable of lay observation.” See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007); see also Petitti v. McDonald, 27 Vet. App. 415, 427-28 (2015) (where the Court of Appeals for Veterans Claims found objective evidence of pain need not come from a medical professional; a lay person may provide the requisite confirmation).

Here, the Veteran has reported that he experienced left knee and shoulder pain following his injuries in service, which has persisted ever since. The Board finds the Veteran competent to report his experiences of pain. It is generally within the competence of a lay person to identify and observe the effect of a disability under the ordinary conditions of daily life. Many symptoms are readily observable by a lay person. Accordingly, the lay evidence provided by the Veteran is unquestionably competent evidence. In this respect, the Board finds the Veteran’s own reports of experiencing pain to be at least as probative as the above-noted February 2016 VA examiner’s findings.

As previously noted, this appeal turns on whether there is a nexus between the Veteran’s current disabilities and his injuries in service. The Veteran has competently and credibly reported that he experienced knee and shoulder pain during and since service. Accordingly, a nexus to service is established. To the extent the February 2016 VA examiner opined that it was less likely as not that the Veteran’s knee and shoulder disabilities were related to his military service, the Board finds this opinion to be of limited probative value as the opinion failed to address the Veteran’s lay statements regarding the onset of his disabilities. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); Dalton v. Nicholson, 21 Vet. App. 23, 39 (2007).

In sum, the Board is satisfied that the evidence supporting a nexus between the Veteran’s currently diagnosed disabilities and his in-service injuries is at least in equipoise with the evidence against a nexus. Therefore, the Veteran is entitled to service connection for his left knee and left shoulder disabilities.

REASONS FOR REMAND

Pursuant to 38 C.F.R. § 20.802, unless an issue on appeal can be granted in full, the Board shall remand the appeal to the agency of original jurisdiction for correction of an error on the part of the agency of original jurisdiction to satisfy its duties under 38 U.S.C. § 5103A, if the error occurred prior to the date of the agency of original jurisdiction decision on appeal. The Board may remand for correction of any other error by the agency of original jurisdiction in satisfying a regulatory or statutory duty, if correction of the error would have a reasonable possibility of aiding in substantiating the appellant’s claim. Under 38 C.F.R. § 3.159 the Department of Veterans Affairs must provide assistance in developing a veteran’s claim. Under certain circumstances, 38 U.S.C. § 5103A (d) and 38 C.F.R. § 3.159 (c)(4) require VA to obtain a VA examination or obtain a medical opinion. The failure to do so constitutes a due process violation. 

The Veteran has initiated claims for service connection for nocturia, balanitis, a right eyebrow laceration, and an acquired psychiatric disorder. His STRs show he was treated for urine entrapment and balanitis in March 1983. He was also treated for a laceration of the right eyebrow, which required sutures in May 1982. Further, the Veteran has competently reported that during his time in the Marine Corps his duties required him to conduct many field artillery operations, which exposed him to loud explosions. A review of his DD-214 indicates his military occupation was Field Artillery Scout, and as such, the Veteran’s reports of exposure to explosions in service is consistent with his occupation therein. Further, the Veteran has reported that his exposure to explosions in service caused him nervousness, anxiety, and trouble concentrating. He has also reported ongoing urine and penile problems since that time. The Veteran is competent to report his present manifestations. The Board also observes that in February 2016 the Veteran underwent a traumatic brain injury examination; however, the RO failed to obtain a scars examination to determine whether the Veteran has residual scarring associated with his right eyebrow laceration in service. Based on the foregoing, the Board finds examinations and medical opinions are warranted to determine whether the Veteran’s current manifestations originated in or are otherwise related to his military service. 

Accordingly, this case is REMANDED for the following actions:

Obtain a VA examination by an examiner with sufficient experience and expertise to address the etiology of the Veteran’s claimed nocturia, balanitis, right eyebrow laceration, and acquired psychiatric disorder. All pertinent evidence of record must be made available to and reviewed by the examiner. Any indicated studies should be performed.

Following a review of the relevant records and lay statements, the examiner should state an opinion with respect to whether any diagnosed nocturia, balanitis, right eyebrow scar, or acquired psychiatric disorder at least as likely as not (a 50 percent probability or greater) originated during his period of active service or is otherwise etiologically related to his active service.

The examiner must provide a complete rationale for all proffered opinions. In this respect, the examiner must discuss and consider the Veteran’s competent lay statements. If an examiner is unable to provide any required opinion, he or she should explain why. If an examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation as to why this is so.

 

 

T. REYNOLDS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board G. Fraser, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.